to draw near and give their attention, as the court is now sitting. God save the United States and this honorable court. Good morning. Welcome, everyone. Our case for argument this morning is Ryan Hope v. Commissioner of Indiana's Department of Correction. I see Mr. Hudson and I see Mr. Rose. Can you both hear me? Yes, Judge. All right. Very good. Let's proceed. Mr. Hudson. May it please the court, the principal question at issue this morning is whether the Indiana Supreme Court's decisions applying the Indiana Constitution's ex post facto clause violate the federal Constitution's privileges or immunities clause. They do not. The Indiana Supreme Court has construed the state's ex post facto clause to permit the state to apply its sex offender registry law retroactively when the marginal effects of doing so are not punitive. And applying this marginal effects principle, the court has articulated a straightforward rule. If an offender has already been required to register by Indiana or any other state, Indiana's sex offender registry law can be retroactively applied to him. This rule does not distinguish among offenders based on how long they have resided in Indiana. And for that reason, it does not violate the federal Constitution's Thank you, Mr. Hudson. Good morning, Your Honor. You've pointed out that there are a variety of scenarios in which a person can become subject to what we are calling the other jurisdiction requirement. They can relocate to Indiana from another state that required them to register as sex offenders, as was true of the six plaintiffs in our case. Or they can simply commute for work or study to another state that requires them to register. My question for you is this. Is there anything other than a person's travel to and from another state that required him to register that accounts for Indiana's decision to impose a registration obligation of its own? Their underlying convictions haven't changed and they have done nothing else that otherwise would increase the Yes, Your Honor. So with respect to the other jurisdiction provision of the sex offender registry law, the reason that Indiana has adopted this provision, like many other states, is simply to ensure that if an offender has been required to register in one state, that which is based on the reasonable presumption that a state's decision to require an offender to register is a reasonable one. To answer your preliminary question, Your Honor, an offender will not be required to register in any state unless the offender has done something in that state to clarify, Mr. Hudson, could I just ask you whether the Indiana law would operate differently if the obligation to register in the other state, let's suppose it's Texas, if the obligation to register in the other state had been fulfilled and was no longer in effect before the person moved back to Indiana? There are circumstances where that will matter and circumstances where that will not matter, Your Honor. It depends on the offense of conviction. So there are some instances in which the other state would not actually be requiring somebody to register, but purely by virtue of Indiana law, the person would have to register because of their history in a different state. Because of the existence of a prior registration obligation in another state, yes, Your Honor. Which is expired, yes. What that clarifies for me is that the requirement that you're talking about actually flows from Indiana law. It doesn't flow from the law of the other state. Indiana is making its own choices about what to do with a former conviction. I think that's certainly right, Your Honor. If Indiana did not have the other jurisdiction requirement, then it's entirely conceivable that someone who is required to register in another state who moves to Indiana will not be required to register in Indiana, if I'm following your question. Right. I'm interested in whether this is something more like a full faith and credit to bring comedy to the other state's registration requirement, or whether Indiana doesn't really care if they still have to register in the second state, as long as they once upon a time did, because Indiana has made a choice to require registration based on the historical fact of a requirement. Your Honor, I think it's fair to say that part of the rationale of the other jurisdiction is the states chooses, for example, to have longer registration obligations for some offenses than other states do. In those sorts of situations, Indiana will say, if you've been convicted of one of those sorts of offenses, even in another state, we will treat you like an Indiana offender and will require you to register for the same period of time that an Indiana offender would. Mr. Hudson, if a person has an old conviction from before the registration law in another state for what Indiana would treat as a registrable sex offense, and that old conviction is in Alaska or Maryland or Maine or the other states that have ex post facto provisions, that person then moves to Indiana, could Indiana apply its 2006 registration requirement retroactively to them based on the substantially equivalent conviction? Not under Wallace, Your Honor. Under the terms of the statute, Indiana could, but under Wallace, the state's ex post facto clause would preclude the state from doing so. So under Indiana law, no. Okay, thank you. I think there are two illustrative examples that demonstrate that the rule the Indiana Supreme Court has articulated does not run afoul of the Privileges or Immunities Clause because it does not impose a durational residency requirement. The key point here is that the Indiana Supreme Court's decisions do not turn on how long an offender has resided in Indiana, but on whether the offender has been required to work. It's common ground, for example, that the Indiana Supreme Court's rule permits the state to apply its sex offender registry law retroactively to a lifelong Hoosier if he works in another state and for that reason is already required to register in that state. At the same time, the Indiana Supreme Court's rule prohibits the state from retroactively applying its sex offender registry law to a brand new Hoosier if, as Judge Hamilton suggested, his former state did not require him to do so. So excuse me, Mr. Hudson, but I don't see anyone arguing the durational residency requirement situation here, such as the one that was at issue in the Supreme Court's decision in Siennes. It wasn't like if you stay long enough in Indiana, now you can be treated as a 100 percent never-changing Indiana resident. This is more what the Court was talking about in Part 5 of its opinion, discrimination against citizens who have completed interstate travel. People who never leave Indiana get one treatment under the statute, and these are per the terms of the statute. Nobody has to guess about disparate treatment or disparate impact. It's right there in the face of the statute. And it discriminates, or let's just say it puts in a different category. People who have never left Indiana are in one category. People who leave Indiana for a while and come back or come to Indiana are in a different category. Would you agree with that? No, Your Honor, and I think that the key point is that it is not the interstate travel itself that the Indiana rule turns upon. The key point is the existence of a registration obligation. But the problem is that the existence of a registration obligation flows from the fact that you were in a different state, and you've just agreed that even if you no longer have a registration obligation in that other state, Indiana, because you came to Indiana, is going to make you register when an Indiana citizen would not have to register. So two points on that, Your Honor. First, I think it's important to note that it is possible to engage in interstate travel and not trigger a registration obligation. For example, traveling to Alaska or Maine, for example, where the state's Supreme Courts have held that their sex offender registry laws do not apply retroactively, which is itself a dispositive indication that what the state is concerned with is not interstate travel itself, but the existence of the registration obligation. But couldn't you say the same thing in Ceyennes, where some states were more generous than California and other states were less generous, so it wasn't every single state that was implicated? I don't think so, Your Honor, because the rule in Ceyennes, as I think you noted earlier, explicitly discriminated on the basis of the duration of residency. And here, there is no Indiana rule that discriminates explicitly or facially on the basis of the duration of residency. The rule consistently turns on whether the offender has been required to register in a state previously. And I think maybe a helpful example here is if someone travels from Indiana to Ohio and gets a speeding ticket in Ohio, that will impose points on the individual's driver's license here in Indiana. And the individual might be able to say, I wouldn't have gotten a speeding ticket if I had never gone to Ohio in the first place. And in some sense, that's true, perhaps, as a factual matter. But that doesn't present a right-to-travel issue because the state isn't concerned with the travel to Ohio or anywhere else. Right, but the difference is Indiana would impose points for the same behavior on an Indiana resident who's driving entirely inside Indianapolis. Well, interestingly, Your Honor, that's not necessarily true. For example, Indiana has a 70-mile-an-hour speed limit on its interstates in Ohio. In some places, it has a 60-mile-an-hour speed limit. And if you're speeding 65 miles an hour in Ohio and get a speeding ticket, that doesn't affect Indiana's decision to impose points on your driver's license. The key point is you have, in this instance, committed a violation in another state, and Indiana recognizes that. And that has consequences in Indiana. And similarly here, if another state has decided to impose registration obligations upon you, that has consequences in Indiana and triggers a registration obligation here. How do you deal with the fact that in Brian Hope's case, the underlying conviction was from Indiana? What Indiana relied on was the fact that Texas required him to register. Yes, that's true, Your Honor. I don't think that, that doesn't change the federal constitutional analysis here, because the rule, the Indiana constitutional rule remains the same. It turns on whether or not an individual has been required to register in another state. And the key point is that rule doesn't discriminate between new residents and old residents. And in fact, Mr. Hope's example is illustrative. Mr. Hope is not a new resident in Indiana. Nevertheless, because he was a new resident, the law can be retroactively applied to him under the Indiana Supreme Court's decisions. And it's the registration that triggers from another state, not the state of conviction, correct? That's correct, Your Honor, yes. Yes, both as a matter of the statute and as a matter of the Indiana constitutional rule. Mr. Hudson, there's been a good deal of discussion about this case. It seems to be borrowed primarily from equal protection and employment discrimination jurisprudence. And I'm wondering, at least as I understand disparate treatment, it involves either facial discrimination or deliberate discrimination with the subjective intent to do so. Does Indiana believe that we should look at the subjective intentions of Indiana lawmakers in evaluating these provisions? No, Your Honor, and that I guess there are two reasons why an inquiry into subjective intent would be inappropriate here. First, the Supreme Court has consistently narrowed the circumstances where the subjective intent is relevant for constitutional purposes. And secondly, here, it is not a rule created by the Indiana legislature that the plaintiffs contend is unconstitutional under the federal constitution. I understand plaintiffs to be saying that Indiana law as a whole discriminates between similarly situated groups of Indiana residents under the Indiana, in the way that the Indiana Ex Post Facto Clause is applied. That's right, Your Honor. And from the plaintiff's perspective, the key rule that violates the federal constitution is a rule articulated by the Indiana Supreme Court. Why does that matter? I mean, there was a period of time in which the Supreme Court of the United States, for example, had found that it was unconstitutional to execute someone who was below the age of 18 when that person committed the murder. And states didn't all reflect that in their law. But if they had just gone ahead and said, well, we're going to execute X anyway because we haven't amended our law yet, I think there would have been a very immediate response from the U.S. Supreme Court. Of course, Your Honor. And the state isn't even suggesting that judicially created rules are immune from scrutiny under the Privileges or Immunities Clause. This is simply the narrow point that because the rule at issue emerges from the Indiana Supreme Court, if any subjective intentions are going to be relevant, it would be the intentions of the justices of the Indiana Supreme Court. And there has never been any suggestion that the justices of the Indiana Supreme Court had any intention to treat new residents of Indiana more poorly than longtime residents of the state. Can I ask you to go back to Judge Rovner's questions about Mr. Hope? Mr. Hope's case seems to me to give you the greatest problems. I understand you're saying, well, Texas just wanted to make him register and that's good enough for now for treating Hope differently from somebody who was convicted of the same offense the same year in Indiana who stayed in Indiana. So, Your Honor, I think the best answer to that question is found in the Indiana Supreme Court's decisions where it explains that, and I suppose to simplify things, going from 0 to 100 is more onerous than going from 50 to 100. So the Indiana Supreme Court has said when we are deciding whether a requirement to register is punitive, we look at the marginal effect of the registration requirement. So that someone who has never been required to register before, that's going to be more punitive. And in some situations, as in the Wallace situation, it will be punitive and therefore will trigger the protections of the state's ex post facto clause. But someone who has been required to register before, well, that marginal effect is going to be smaller. And the Indiana Supreme Court has said in that situation, specifically in Tyson, Ammons, and Zerbe, with respect to individuals who have been required to register in other states, that marginal difference is sufficiently small that it is non-punitive and it's worth acknowledging that the Indiana Supreme Court has applied precisely this sort of reasoning to situations that don't involve out-of-state registrations at all. So in the Jensen case and the Lemon case, for example, the Indiana Supreme Court said someone who already had an Indiana registration would not be subject to the Wallace rule. In other words, applying the ex post facto clause to someone who has never been required to register, regardless of the otherwise retroactive provision, is non-punitive because they've already been required to register. So that's the key idea, that there is a difference between someone for the purposes of the punitive analysis under the state's ex post facto clause. There's a difference between someone who has never been required to register and someone who has already been required to register, whether it's by Indiana or any other state. Mr. Hudson, let me ask that same question in terms of equal protection analysis and assume it proceeds under a rational basis standard. Picking up on the fact pattern that Judge Hamilton was pointing you to, what's the rational basis for the differential treatment of those two prior offenders? So I think it gets back to precisely what I was saying, Your Honor, that the Indiana Supreme Court has recognized that there is a difference from Indiana's perspective of someone who has been required to register before, whether it's by Indiana or by any other state, and someone who has never been required to register before. And the Indiana Supreme Court has concluded that applying the whole panoply of registration obligations that go with the state's sex offender registry law to someone who has never been required to register before, that that's punitive. I know for purposes of ex post facto analysis, I totally understand that. You're clear on that. For purposes of equal protection though, if you're focused on a gentleman that picks up the registration obligation because of touching taxes and a requirement in Texas, the whole purpose of the sex offender registration scheme is notice, community safety, etc. How do you articulate the rational purpose of treating those two individuals in different ways? Well, perhaps I'm not following, Your Honor, but I think all agree that the state has a compelling interest in its sex offender registry law generally. And then the question is, does the state have rational reasons for exempting certain individuals from the application of its sex offender registry law? Sure. But I'm talking about the statutory law plus, you know, with the interpretation of the Indiana Supreme Court overlay, you have two individuals, as Judge Hamilton's pointed out, that are treated very differently. And again, the reason they are treated very differently is not because of their interstate travel or where they live, but is instead entirely premised on the existence of a prior registration obligation. And to get to your point, which is an entirely reasonable question, what is the rationale from the federal constitutional perspective? Not under a right to travel analysis or privileges or immunities or ex post facto, just straight up equal protection. And in asking the question, I realize that's not how the district court analyzed it, but I think it's an important question, Your Honor. But I think the answer is the same answer, because the differential treatment, the justification for the differential treatment is the same. We look because the differential treatment, again, is created by operation of the Indiana Supreme Court's decisions. And this is a situation unlike a statute that is subject to an equal protection clause challenge where we have an explanation for the differential treatment. It's right there in the Indiana Supreme Court's decisions. You're drawing a very sharp line between the existence of a prior registration requirement, which you say is fine, and the act that gave rise to that prior registration requirement, which was the period of time in the other state, let's say Texas. And I wonder if that's a meaningful distinction. It sounds to me as if somebody in Cyennes could have said, oh, we're not discriminating against people who haven't been in California for a full year. We're just equalizing the welfare payments to what they used to get. But the reason they're doing that flows entirely from the travel. And so I think you're trying to create a distinction where there isn't one. Well, I think a very important point, Your Honor, is there is no doubt that in Cyennes, a lifelong Californian would have been entitled to the full benefits of the program at issue there. Just as a lifelong Hoosier will never have a registration requirement in conflict with Wallace. Precisely not, Your Honor, because a lifelong Hoosier who travels to another state, who works, for example, in Illinois, will not have the benefit of Wallace, but will fall under Tyson, Ammons, and Serby, which shows that the state's rule does not turn on how long you have been a resident. And again, that, of course, is the way the U.S. Supreme Court has articulated the rule under the Privileges or Immunities Clause. Who would have standing in this case to raise that claim? We don't have any plaintiffs who were commuters. So I'm not sure that the commuter situation is in front of us. Well, Your Honor, the point is not that that situation would violate the federal Constitution. The key point is under a Privileges or Immunities Clause analysis, specifically a challenge under Cyennes and the related cases, the key question is, is the state law rule, is the state law rule discriminating between new residents and old residents? And we can only, we can't answer that question by looking at simply specific applications. We have to look at the rule as a whole. And the rule as a whole... Why do we have to do that instead of looking at the rule as applied to these people? There are plenty of people in Cyennes who weren't harmed by California's requirements because they came from more generous states. And the reason, Your Honor, is the rule in Cyennes was written directly into the statute. There wasn't any doubt about what the content of that rule was. Why does that matter? It's back to whether the Indiana Supreme Court really gets to speak to Indiana law, which is not a proposition I'd like to challenge. Well, the only point, Your Honor, is that the question for the federal constitutional purposes is whether the state law rule discriminates between new residents and old residents. And so to answer that question, we have to look at the rule. And that, of course, is what the court did in Cyennes. And the rule there facially discriminated between new residents and old residents. And the rule here, and this is the key point, the rule here is that Indiana law turns on whether the offender has a prior registration obligation. And because that rule doesn't discriminate between new residents and old residents, then we know that it doesn't violate the Privileges or Immunities Clause. So in other words, you're saying that as a matter of law, when we have a right to travel case, the only thing we can look at is facial constitutionality, that it's impossible to assess on an as-applied basis? Is that your You might be able to imagine situations where the plaintiff is arguing that the rule as it exists is different than the statutory rule. For example, if as a factual matter, the plaintiff alleges that the state treats visitors from Ohio differently than it treats native Hoosiers, you could imagine a situation like that. But outside of that circumstance, yes, that's precisely so. And the reason is because the right to travel doesn't countenance disparate impact claims. If it did countenance disparate impact claims. This isn't about disparate impact. This is only about whether it's possible. It's the inverse of the direction where the Supreme Court has been going. The Supreme Court has been very discouraging about facial challenges and has stressed that when you have an adversary system such as ours, it's really the as-applied context that needs to be front and center. Well, to be clear, Your Honor, I think sometimes there's confusion between what facial and as-applied means. You're certainly right that the U.S. Supreme Court has encouraged as-applied relief, that is limiting injunctive relief to the plaintiffs, undoubtedly. And certainly the state doesn't want to suggest that that sort of relief is unavailable in a right to travel context. The key point is the theory. The theory is always going to be the rule on its face is unconstitutional because the U.S. Supreme Court has said it is only rules that can violate the privileges or immunities clause because it's the rule that discriminates between new and old residents. That, I think, is the crucial point. Mr. Hudson, do you agree that if the right to travel is not implicated that the appropriate remedy here is to remand to the district court to conduct the rational basis review on the equal protection claim? Your Honor, the state is perfectly happy to litigate the rational basis question in the district court. It doesn't think that's necessary. The state thinks that the rational basis question is very straightforward given how lenient a standard that is. But that wasn't litigated in the district court yet, correct? The plaintiffs raised their rational basis claim in the district court and the parties moved for a cross move for summary judgment on all claims, including that claim. So the parties litigated it. It is true that the district court did not rule on that claim, yes. All right. Thank you very much. Mr. Rose. Thank you. Thank you, and may it please the Court. Everyone agrees that if Brian Hope had remained in Indiana after his Indiana conviction, he would be relieved of registration requirements entirely. Everyone agrees that if any of the other plaintiffs had moved to Indiana sooner or if they had moved from different states, they would be relieved of their registration requirements entirely. What the state is doing now as this position has been clarified on appeal is it is using the lifelong registration in Indiana. There is no difference between Indiana saying we are requiring you to register based on your out-of-state registration and Indiana saying we are requiring you to register because another state's statutes apply to you. When those statutes apply because of an out-of-state registration. The right to travel asks about a new resident's treatment vis-a-vis established residents, not about the same person's treatment in his or her state of origin. If the Court in silence had been faced with a statute that instead of explicitly imposing a non-linear durational residency requirement, said we are going to limit your benefit levels, if in another jurisdiction you had received benefit levels below this specific level, I am hard-pressed to suggest that the U.S. Supreme Court would have reached a different result in this case. The only distinction between this case and silence is that here Indiana never permits an individual to obtain bona fide Indiana residency. That is obviously not a distinction that inerts the state's benefits. Certainly we acknowledge that there are other reasons that an individual may not be eligible for a non-linear  going to a school, the state seizes on this fact in order to characterize our argument as a disparate impact one. Our argument is not a disparate impact one. What the state is actually saying is that we do not think the right to travel is violated as to these persons because we do not discriminate against other persons based on their change of residency. The fact that other persons might have to register for other reasons does not change the fact that for our plaintiffs here, they are very much required to register based on when they relocated to Indiana. Just to be clear, this was the Supreme Court's rephrasing of what the district court judge, Judge David Levy, had said, that the relevant comparison is between the new residents and longer-term residents of California. In that case, you're saying the newer residents and the long-standing residents of Indiana in our case, right? That's absolutely true, Your Honor. Indiana applies its registration requirements retroactively to persons who establish residence before a certain date. The fact that it also applies these requirements retroactively or does not apply them retroactively to persons who move to Indiana from different states, from Alaska or Maine, does not change the fact that for these persons, we very much have a right to travel violation. I know of no theory of the right to travel that says it's okay to discriminate against someone who moves from Michigan simply because you do not discriminate against the same person who moves from Maine or from Alaska. It's impossible to view this case as anything but a right to travel case when you look at the specific facts that gave rise to each of the plaintiff's registrations. As I say, if Brian Hope had been here the entire time, no registration requirement. He moves to California, then Texas. Texas requires him to register even for a day, and he is subject to Indiana registration for the rest of his life when he moves back. Clearly, the change in residence is the impetus that the state has seized on to require registration. The parties have spilt a great deal of ink debating the applicability of right to travel analysis in this case altogether. Certainly, we acknowledge that this is not a durational residency case, except to the extent that the duration is forever. It's not a case that is as clean as Zobel or Hooper, where you're looking at a specific date and were you a resident on that date. The date very well may differ for each person, depending on when Indiana made their crime register full. Ultimately, right to travel analysis only deals with the level of scrutiny that this court has to apply. Even under low-level scrutiny, I am hard-pressed to find a footing that the state may stand on. In its briefing, the only interest that is suggested is a supposed notice interest. Persons who move here after the enactment of Indiana SORA are on notice of the requirements that Indiana poses on the day they show up. It is very difficult to see how that is a state interest at all, if it is one that applies in every right to travel case so far as the statute was on the books. Certainly, there are right to travel cases decided under low-level scrutiny. Whether or not that is a legitimate state interest at all, it's certainly not one that justifies the distinction between the person who comes here from Alaska and the person who comes here from Michigan. Are there right to travel cases based on the lower-level scrutiny that are separate and distinct from the Equal Protection Clause? In other words, if we are just analyzing this under the Privileges or Immunities Clause as opposed to the Equal Protection Clause, and I know both claims are here, would lower-level scrutiny apply or wouldn't it just become an Equal Protection case at that point? Judge, I think Zobel applied low-level scrutiny. It did it through Equal Protection analysis. I'm sorry to interrupt. Not through the Privileges or Immunities Clause, separate and distinct. That is my recollection, Judge, yes. And I think the right to travel obviously deals with the level of scrutiny. If you get to the heightened scrutiny through right to travel analysis, then that's what you have to apply. I think at the lower end of the spectrum, you really are dealing with an Equal Protection issue at that point. And do you agree, Mr. Rose, that if the right to travel is not implicated here, that the appropriate remedy would be to send it back to the District Court for a rational basis review on the Equal Protection claim? I certainly agree that that's something that's within the Court's discretion. As Mr. Hudson pointed out, it was fully briefed in the Court below. It was fully briefed in this Court, but certainly we acknowledge that that would be within the Court's discretion to do. Staying on the rational basis question, the State now is suggesting, is seizing on the Indiana Supreme Court's analysis in Wallace and subsequent cases to suggest this rational basis has to do with differences in the punitive effects of its statute, differences in the effects of its statute. There is no difference in its effect. The same exact statute is being applied to the person who moved here after a certain date as is being applied or not being applied to the person who moved here before a certain date. That is not even a distinction between those persons. It's certainly not a rational one. So does this marginal effects analysis apply if the registration obligation in the other State has been fulfilled and has expired? The State is saying now that it may require that person to register. Right, and I'm just saying from a marginal effects standpoint, why isn't that person going from 0 to 100, to use Mr. Hudson's analogy, not 50 to 100? They don't have to register anymore in the other State. That, of course, is true. The effect is identical for that person as it is to the person who comes here never having been required by his previous State to register. And while we don't have any plaintiffs who have their registration requirements expire, two of the plaintiffs, Mr. Rice and Mr. Dash, came here with a 10-year registration requirement from their State of origin. As soon as they set foot in Indiana as residents of the State, Indiana decided you have to register for the rest of your lives. Indiana is very much applying Indiana law, not the law of Michigan, not the law of Ohio, and it is doing so against persons who arrive here after a certain date. The fact that it is also doing so against persons who, as I say, commute to another State for work or school has absolutely nothing to do with this case when each of the plaintiff's registration obligations has been imposed based on that change in residency. Those persons very well may have a decent claim under a different component of the right to travel or even under a low-level equal protection scrutiny. It is very difficult to see a rational basis between the person who commutes to Cook County for work as opposed to the person who just works in Maine County, but that issue is simply not before this Court. The third component... So do you agree that we could assume for the sake of this case that it would be permissible for Indiana to treat the commuters as having an ongoing registration obligation? For the sake of this case, there is absolutely no reason to address that issue, and I see no problem at all with that assumption because, as I say, none of our plaintiffs fit in that class, and that very well may be a question for another day. It is not one that we have presented in this case. Registration in Indiana turns on one of three things. Where you work, where you attend school, or where you live. For persons who have been required based on a change in where they live, that very much is discrimination based on their residency, and the state cannot get around that fundamental point. Mr. Rose, why would it be unreasonable for a state to say, look, if somebody has committed one of these very serious offenses in another state and is subject to a registration requirement, we don't want to let them out from under that by coming to our state. We don't want to... We welcome people from all states, but we don't want people to be able to leave behind such an obligation that we believe contributes to public safety. Judge, that's the safe haven argument that the Supreme Court rejected and Shakir rejected in science. States are not allowed to say, we're okay with people from one state, but not okay with people from another state. The state is saying, fine, welcome, but you cannot leave behind this sort of obligation. You can't get out from under it. And I don't think that changes anything, Judge. Obviously, none of our plaintiffs, the facts demonstrate, came to Indiana with the express purpose of getting away from a registration requirement. I assume a standard that tested subjective purpose would be even more intrusive and problematic. And we're certainly not suggesting a standard based on subjective purpose. What we're saying is that under right to travel analysis, there has to be a fit between the state's purpose and the state's ends. And what Shapiro and what science said is that because there are any number of reasons that persons travel between states, you cannot rely on that as the purpose. And I should add, I don't think the state can, on the one hand, say this has nothing to do with your traveling. And on the other hand, say the reason we want this, we want to impose registration requirements against you, is because you are traveling, because you are trying to get away from your other state. I think that is very much at odds with itself. But of course, states regularly, when things are in a form called a judgment, enforce obligations imposed by other states that they perhaps would not have done. This is very old full faith in credit law. And if Illinois imposes a child support obligation on somebody and that person moves to Indiana, Indiana will respect that Illinois judgment. And there are many, many examples of that sort of thing. Of course, it's not just a full faith in credit issue. There's nothing wrong with Indiana accepting another state's determination that you've committed a sex offense. You see that all the time in felon disenfranchisement laws, in felon possession laws. Nothing compels the receiving state to look beyond the other state's statutes and find the Indiana comparison. This is Mr. Hudson's 65 versus 70 miles per hour example. Indiana doesn't care where you committed your sex offense. What they care is when you came to Indiana and which state you came from at this point. And as I say, that is the heart of right to travel analysis. Whether or not the statute itself is as clear on that front as it was in science and in the original residency cases. And even if it were not, the state has a significant amount of decline to even demonstrate a rational basis that differentiates two persons who committed the exact same offense at the exact same time and came to Indiana at different times. Would your argument be different if the registration requirements were somehow embedded in criminal judgments? I know they're not. They're a separate legal body. But if they were in the criminal judgment, then certainly Indiana could follow suit and just carry out whatever the other state had imposed. But I take it your argument is Indiana is doing much more than that here. Of course. And Indiana, I'm positive, applies conditions of supervised release for people that move here from other states. What it could not do is it could not say that because you moved here with this conviction from when you lived in another state, we're going to go well beyond that judgment and say that you are going to be subjected to these requirements for the rest of your life when the exact same person in Indiana who received the exact same judgment with the exact same sentence is relieved of those obligations from that point forward. Thank you very much. Thank you very much. Mr. Hudson, you had a little time left. Very little. You may proceed. Thank you, Your Honor. Just one quick clarification to a response I gave to Judge Wood. I don't think it has significance to the federal constitutional issues. I just wanted to clarify. There is a distinction between the state extending an obligation that already exists. The Indiana Supreme Court has made clear there are no retroactivity problems with that. That's Lemon and Harris. The separate question of whether someone who has completely completed their preexisting registration obligation and how the marginal effects test would apply to them if they've completed it at the time the statute was created is an open question and the state does not have a position on that question, just to clarify. Thank you to the court. Thank you very much. Our thanks to both counsel. The case is taken under advisement and the court will be in recess.